527 S.E.2d 742

**Malik Abdul AL–SHABAZZ, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 24995.**

Supreme Court of South Carolina.

Submitted Nov. 18, 1998.
Decided Aug. 23, 1999.
Heard Dec. 14, 1999.
Refiled Feb. 14, 2000.

Assistant Appellate Defender Robert M. Pachak, of the South Carolina Office of Appellate Defense, Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Teresa A. Knox, all of Columbia, for respondent.

General Counsel Richard P. Stroker and Deputy General Counsel William Ansel Collins, Jr., both of South Carolina Department of Corrections, Columbia, for intervenor.

WALLER, Justice:

Malik Abdul Al–Shabazz (petitioner) filed a post-conviction relief (PCR) application in September 1995. A circuit judge summarily dismissed the application without an evidentiary hearing. Petitioner appealed. After issuing our original opinion in which we vacated and remanded this matter for further proceedings, *Al–Shabazz v. State*, Op. No. 24995 (S.C.Sup.Ct. filed August 23, 1999) (Shearouse Adv.Sh. No. 28 at 31), we granted respondent's petition for rehearing. We simultaneously granted a motion to intervene by the South Carolina Department of Corrections (Department). After hearing oral arguments in this matter, we now withdraw our original opinion and issue this opinion. We vacate and remand for further proceedings.

## FACTS

Petitioner is serving prison sentences totaling eighty-three years. In his PCR application, petitioner challenged the decision of an Adjustment Committee (Committee)[1] of Department to take away a portion of the credits he had accrued for good conduct (good-time credits). In addition, petitioner alleged the Committee had unlawfully found him guilty of violating institutional rules and illegally placed him in solitary confinement. He alleged that Department and the Committee

---

1. Department implemented a new inmate disciplinary system in January 1997. *Annual Report of the South Carolina Department of Corrections, 1997–98* at 6. Department's current policies do not mention an Adjustment Committee, which apparently has been replaced by the system we briefly describe below.

had violated his constitutional rights to procedural due process and equal protection in several ways, such as refusing to let him call his own witnesses or provide him with a competent inmate representative.

Petitioner alleged those deficiencies in the process nullified any forms he signed admitting to violations of prison rules. He claimed the deficiencies not only violated constitutional safeguards, but also deviated from Department's own policies and procedures on Committee hearings. He sought court-appointed counsel to assist him in preparing his PCR case.

The State asked the PCR judge to dismiss the application pursuant to *Tutt v. State,* 277 S.C. 525, 290 S.E.2d 414 (1982) (PCR Act may be invoked only by someone claiming right to have sentence vacated, set aside, or corrected; the Act does not give a court authority to consider allegations that an inmate's constitutional rights were violated when prison authorities transferred him within the prison system and downgraded his custody status). The PCR judge summarily dismissed the case, citing *Tutt v. State.*

We granted the petition for a writ of certiorari to answer the following procedural question:

May petitioner raise claims regarding good-time credits and solitary confinement in a PCR action and, if not, how must he raise such claims in order to obtain review?

In resolving petitioner's case, we substantially modify the process by which PCR applicants and inmates [2] raise certain types of claims. First, we will explain the claims and basic procedures available in collateral attacks on a conviction or sentence in a PCR proceeding. Second, we will explain how inmates may seek review of claims involving non-collateral matters, i.e., administrative matters that are not cognizable in a PCR proceeding. Finally, we will apply our reasoning to the facts of petitioner's case.

---

2. We will use the terms "applicant" or "inmate" throughout this opinion. We note that a person has standing to apply for PCR if he is in custody or if the results of his conviction still persist after release from custody. *Jackson v. State,* 331 S.C. 486, 489 S.E.2d 915 (1997); *Jones v. State,* 322 S.C. 101, 470 S.E.2d 110 (1996).

*DISCUSSION*

## A. COLLATERAL ATTACKS ON A CONVICTION OR SENTENCE

Post-conviction relief processes created by the states are the result of the United States Supreme Court's determination that the Fourteenth Amendment may require the states to afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees. *See Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965) (after Court granted certiorari to determine this question, the judgment in *Case* was vacated and remanded to be heard in light of new statute providing a post-conviction relief procedure). South Carolina adopted its version of the Uniform Post–Conviction Procedure Act in 1969. S.C.Code Ann. §§ 17–27–10 to –160 (1985 & Supp.1999) (PCR Act).

The courts, the state Office of the Attorney General, the state Office of Appellate Defense, private attorneys, prison officials, and many inmates have grown familiar with a well-defined process developed under the PCR Act during the past thirty years.

The applicant submits his claims on a standard PCR application, initiating a civil action governed by the South Carolina Rules of Civil Procedure in the Court of Common Pleas in the county where he was convicted. S.C.Code Ann. §§ 17–27–40, –50 and –80 (1985); Rule 71.1, SCRCP; Appendix of Forms, SCRCP, Form 5. The applicant must raise all available grounds for relief in his first application because successive applications usually are barred. S.C.Code Ann. § 17–27–90 (1985); *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392 (1991).

The applicant may not bring a PCR action while a direct appeal is pending. Rule 71.1(b), SCRCP. In a direct appeal, the focus generally is upon the propriety of rulings made by the circuit court in response to a party's motions or objections. In PCR, the focus usually is upon alleged errors made by trial or plea counsel. Therefore, when asserting the erroneous admission of evidence, a violation of a constitutional right, or other errors in a proceeding, the applicant generally must frame the issue as one of ineffective assistance of counsel. *Drayton v. Evatt*, 312 S.C. 4, 9, 430 S.E.2d 517, 520 (1993)

(holding issues that could have been raised at trial or in direct appeal cannot be asserted in PCR application absent a claim of ineffective assistance of counsel); *Hyman v. State,* 278 S.C. 501, 299 S.E.2d 330 (1983) (same); *Richardson v. State,* 310 S.C. 360, 363, 426 S.E.2d 795, 797 (1993) (explaining that defendant who pleads guilty upon advice of counsel may only attack the voluntary and intelligent character of plea by showing that advice he received from counsel was not within range of competence demanded of attorneys in criminal cases). The applicant attempts to show that his or her attorney erred in a manner that a reasonably proficient attorney would not, and that the error prejudiced his case. *See* cases collected in 8 West's South Carolina Digest, *Criminal Law,* Key No. 998.

The State must respond by answer or motion to the application. S.C.Code Ann. § 17–27–70(a) (1985). The State may move for summary dismissal of the application, but the court must not grant that motion without first giving the applicant a chance to reply to the proposed dismissal. Furthermore, summary dismissal without a hearing is appropriate only when (1) it is apparent on the face of the application that there is no need for a hearing to develop any facts and (2) the applicant is not entitled to relief. S.C.Code Ann. § 17–27–70(b) and (c) (1985).

■ When considering the State's motion for summary dismissal of an application, a judge must assume facts presented by an applicant are true and view those facts in the light most favorable to the applicant. *Cf. Stiles v. Onorato,* 318 S.C. 297, 457 S.E.2d 601 (1995) (ruling on a Rule 12(b)(6), SCRCP, motion to dismiss must be based solely upon the allegations set forth on the face of the complaint, and the motion may not be sustained if facts alleged and inferences reasonably deducible therefrom would entitle plaintiff to any relief on any theory of the case).

An indigent applicant who is granted a hearing has a statutory right to be represented by a court-appointed attorney. S.C.Code Ann. § 17–27–60 (1985); *Whitehead v. State,* 310 S.C. 532, 426 S.E.2d 315 (1992); Rule 71.1(d), SCRCP. After a hearing, the PCR court grants or denies relief by issuing a written order containing findings of fact and conclusions of law. S.C.Code Ann. § 17–27–80 (1985). Either party

must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order. *Pruitt v. State*, 310 S.C. 254, 423 S.E.2d 127 (1992) (issue must be raised to and ruled on by the PCR judge in order to be preserved for review); *Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992) (same).

A final judgment in a PCR action must be timely appealed, and it is filed in the Supreme Court as a petition for a writ of certiorari. S.C.Code Ann. § 17–27–100 (1985); Rule 71.1(f), SCRCP; Rule 227, SCACR. An indigent applicant has a right to be represented on appeal by court-appointed counsel. Rule 71.1(g), SCRCP.

Before the adoption of the PCR Act, inmates often pursued post-appeal claims by petitioning the court for a writ of habeas corpus or other remedial writ. The PCR Act now "comprehends and takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence." S.C.Code Ann. § 17–27–20(b) (1985); *Finklea v. State*, 273 S.C. 157, 255 S.E.2d 447 (1979) (aim of PCR Act is to consolidate in one simple statute all the remedies presently available for challenging the validity of a sentence of imprisonment).

In keeping with that principle, we clearly have indicated that we wish to limit habeas petitions and funnel issues raised by inmates challenging their conviction or sentence into the PCR process. We briefly traced the history of habeas corpus and the advent of the PCR Act in *Simpson v. State*, 329 S.C. 43, 495 S.E.2d 429 (1998). We held that a matter which is cognizable under the PCR Act must be raised in PCR application, and may not be raised by a petition for a writ of habeas corpus before the circuit or other lower courts. This Court retains its ability to consider habeas petitions in its original jurisdiction and grant relief in those unusual instances where "there has been a violation which, in the setting, constitutes a denial of fundamental fairness shocking to the universal sense of justice". *Id.* at 46, 495 S.E.2d at 431; *accord Gibson v. State*, 329 S.C. 37, 40, 495 S.E.2d 426, 428 (1998) (availability of habeas corpus has been severely limited by PCR Act, and is available only when other remedies such as PCR are inadequate or unavailable); *Keeler v. Mauney*, 330 S.C. 568, 500

S.E.2d 123 (Ct.App.1998) (interpreting *Simpson v. State* and *Gibson v. State* to bar inmate's habeas petition in circuit court challenging a jury charge because inmate could have raised it in his earlier PCR application).

In recent years, this Court has allowed inmates to raise claims regarding sentence-related credits [3] in a PCR proceeding because calculating those credits potentially affects the duration of a sentence. The Court did so primarily because PCR provides an established and uniform process, as well as the availability of appointed counsel. *See Busby v. Moore,* 330 S.C. 201, 498 S.E.2d 883 (1998) (deciding in PCR actions that inmates are eligible to earn good-time credits when sentence begins to run, but inmates actually earn the credits only after they behave properly); *Harris v. State,* 309 S.C. 466, 424 S.E.2d 509 (1992) (deciding in PCR action that Ex Post Facto Clause was not violated because inmate was not prejudiced by inability to earn good-time and work credits under new statute); *Elmore v. State,* 305 S.C. 456, 409 S.E.2d 397 (1991) (deciding in PCR action that substantive violation of Ex Post Facto Clause results from denial of work credits to inmates entitled to such credits when an offense is committed, but inmate suffered no ex post facto violation because he was not eligible for the credits when he committed his crime).

Despite the decision in *Tutt v. State, supra,* the Court occasionally has allowed inmates to raise conditions of imprisonment in a PCR proceeding. *See Simmons v. State,* 316 S.C. 28, 446 S.E.2d 436 (1994) (stating "conditions of imprisonment have been considered on a discretionary basis in PCR proceedings and by this Court," and considering whether Department properly denied inmate's request for work release).

In 1995, the Legislature enacted a statute of limitations for PCR actions. An application "must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later." S.C.Code Ann. § 17–27–45(A) (Supp. 1999). The statute also sets a one-year deadline for filing an application to assert a newly created and retroactively applied

---

**3.** *See* S.C.Code Ann. § 24–13–210 (Supp.1999) (good-time credits); S.C.Code Ann. § 24–13–230 (Supp.1999) (work and education credits).

standard or right, and a one-year deadline to raise newly discovered material facts that require vacation of a conviction or sentence. S.C.Code Ann. § 17–27–45(B) and (C) (Supp. 1999).[4] Thus, an inmate whose credits-related claim arises years after the deadline is barred from filing a PCR application.

Given the impact of the new statute of limitations, we re-emphasize the core purpose of the PCR Act as set forth in S.C.Code Ann. § 17–27–20(a) (1985).[5] We hold that, aside from two non-collateral matters specifically listed in the PCR Act, PCR is a proper avenue of relief *only when the applicant mounts a collateral attack challenging the validity of his conviction or sentence* as authorized by Section 17–27–20(a). A typical PCR claim of ineffective assistance of counsel falls into this category because, if the applicant proves his case, his conviction or sentence will be overturned. A claim regarding sentence-related credits or other condition of imprisonment does not fall into this category. A successful claim, while it

4. Under our holding below, the provisions for future discovery of certain matters contained in Sections 17–27–45(B) and (C) apply only to matters properly raised in a PCR action. The discovery provisions do not apply to non-collateral or administrative matters described in Section B of this opinion.

5. Section 17–27–20(a) states:
 Any person who has been convicted of, or sentenced for, a crime and who claims:
 (1) That the conviction or the sentence was in violation of the Constitution of the United States or the Constitution.or laws of this State;
 (2) That the court was without jurisdiction to impose sentence;
 (3) That the sentence exceeds the maximum authorized by law;
 (4) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
 (5) That his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or
 (6) That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy; may institute, without paying a filing fee, a proceeding under this chapter to secure relief. Provided, however, that this section shall not be construed to permit collateral attack on the ground that the evidence was insufficient to support a conviction.

may affect the duration of the sentence or the quality of life in prison, will not affect the validity of the underlying conviction or sentence. *Accord Finklea v. State, supra;* 11A *Uniform Laws Annotated* 275, Comment on Section 1 of Uniform Post–Conviction Procedure Act (1995) (Act was written, in part, "to bring together and consolidate into one simple statute all the remedies, beyond those that are incident to the usual procedures of trial and [appellate] review, which are at present available for *challenging the validity of a sentence of imprisonment* ") (emphasis added).

The only exceptions to our holding are two non-collateral matters specifically listed in Section 17–27–20(a)(5): the claim that an applicant's sentence has expired and the claim that an applicant's probation, parole, or conditional release has been unlawfully revoked. Under the approach we outline today, these claims are non-collateral matters because neither constitutes a challenge to the validity of the underlying conviction or sentence.

The specific inclusion of these provisions in the PCR Act merely reflects the fact that the Act replaced the petition for a writ of habeas corpus, which an inmate would have used to make such claims in the past. In the first instance, the applicant asserts he has fully served a valid sentence and now must be released. In the second instance, the applicant asserts he should not have been returned to prison to serve the remainder of a valid sentence. We hold that these two claims, because they are specifically listed in the PCR Act, may be raised in PCR or as a non-collateral matter in the manner outlined below.

## B. NON–COLLATERAL OR ADMINISTRATIVE MATTERS

We next address the procedure an inmate must use when seeking review of Department's decision in a non-collateral or administrative matter, i.e., one in which an inmate does not challenge the validity of a conviction or sentence.

### (1) BACKGROUND

 We previously have held that the issues of solitary confinement and downgrading of custody status are not prop-

erly raised in a PCR proceeding. *Tutt v. State*, 277 S.C. 525, 290 S.E.2d 414; *Crowe v. Leeke*, 273 S.C. 763, 259 S.E.2d 614 (1979). Today we add credits-related issues and other conditions of imprisonment to the list of administrative matters. We overrule *Busby v. Moore*, 330 S.C. 201, 498 S.E.2d 883; *Harris v. State*, 309 S.C. 466, 424 S.E.2d 509; *Elmore v. State*, 305 S.C. 456, 409 S.E.2d 397, and *Simmons v. State*, 316 S.C. 28, 446 S.E.2d 436, to the extent they stand for the proposition that credits-related issues or conditions of imprisonment may be raised in a PCR proceeding.

■ The question of whether an inmate may seek judicial review of Department's decisions under the South Carolina Administrative Procedures Act (APA)[6] went unanswered in *Pruitt v. State*, 274 S.C. 565, 567 n. 2, 266 S.E.2d 779, 780 n. 2 (1980). Today we answer that question affirmatively and hold that an inmate may seek review of Department's final decision in an administrative matter under the APA. Placing review of these cases within the ambit of the APA will ensure that an inmate receives due process, which consists of notice, a hearing, and judicial review. It also will provide an orderly and consistent framework for resolving such matters.

These administrative matters typically arise in two ways: (1) when an inmate is disciplined and punishment is imposed and (2) when an inmate believes prison officials have erroneously calculated his sentence, sentence-related credits, or custody status. While review by an administrative law judge and the courts will be available under the APA, we emphasize that we are not holding that all APA provisions apply to the internal prison disciplinary or decision-making processes.

■ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). The statutory

---

**6.** The statutes often described collectively as the APA now include three articles: S.C.Code Ann. §§ 1–23–10 to –160 (1986 & Supp.1999) (Article 1 on rulemaking and code of regulations); S.C.Code Ann. §§ 1–23–310 to –400 (1986 & Supp.1999) (Article 3 on administrative procedures); and S.C.Code Ann. §§ 1–23–500 to –660 (Supp.1999) (Article 5 on administrative law judge division).

right to sentence-related credits is a protected "liberty" interest under the Fourteenth Amendment, entitling an inmate to minimal due process to ensure the state-created right was not arbitrarily abrogated. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In that case, the Supreme Court established the minimum constitutional requirements for procedural due process when an inmate is disciplined for "serious misconduct." [7]

In reaching its decision, the Supreme Court explained that courts must balance the demands of the Due Process Clause against the need to maintain an orderly and safe prison environment.

> Prison disciplinary proceedings ... take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life.... Guards and inmates coexist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

*Wolff*, 418 U.S. at 561–62, 94 S.Ct. at 2977, 41 L.Ed.2d at 954. Similarly, the New Jersey Supreme Court stated that

> [i]t must be remembered that prisons and correctional institutions are not quiet monasteries. Their security and order are peculiarly dependent upon a system of swift, stern, unmistakable, and yet fair disciplinary justice. That measure of control is as important to protect the right to safety of the peaceful inmate population as to that of the correctional staff inside and the public outside.... Thus, a

---

**7.** One author has noted that the Supreme Court actually established the *maximum* constitutional requirements in such proceedings, given its reversal of two lower courts' decisions granting additional rights to inmates. John W. Palmer, *Constitutional Rights of Prisoners*, § 8.3 (1991) (discussing *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)).

court must weigh any expansion or refinement of long-established due process rights of prisoners against the safety of all the prisoners and the corrections staff.

*McDonald v. Pinchak,* 139 N.J. 188, 652 A.2d 700, 703 (1995). We have carefully weighed such considerations in reaching our decision today.

In *Wolff,* the Supreme Court held that due process in a prison disciplinary proceeding involving serious misconduct requires: (1) that advance written notice of the charge be given to the inmate at least twenty-four hours before the hearing; (2) that factfinders must prepare a written statement of the evidence relied on and reasons for the disciplinary action; (3) that the inmate should be allowed to call witnesses and present documentary evidence, provided there is no undue hazard to institutional safety or correctional goals; (4) that counsel substitute (a fellow inmate or a prison employee) should be allowed to help illiterate inmates or in complex cases an inmate cannot handle alone; and (5) that the persons hearing the matter, who may be prison officials or employees, must be impartial. *Wolff,* 418 U.S. at 563–72, 94 S.Ct. at 2978–82, 41 L.Ed.2d at 954–60.

The Supreme Court also held that the inmate does not have a constitutional right to confront and cross-examine witnesses who testify against him, although prison officials have the discretion to grant that right in appropriate cases. Furthermore, the inmate does not have a constitutional right to retained or appointed counsel at a disciplinary hearing. *Id.*

### (2) DEPARTMENT'S INTERNAL PROCESS

 Department has established procedures to resolve inmate disciplinary problems and impose appropriate punishment. Department gives a copy of the disciplinary rules and procedures to each inmate. In a recent annual report, Department stated that "inmates who violate the rules will be provided due process and disciplinary actions will be adjudicated in a responsive and fair manner." *Annual Report of the South Carolina Department of Corrections, 1997–98,* at 6.

Department has outlined procedures for conducting "minor" and "major" disciplinary hearings. The following discussion describes Department's procedures in major disciplinary hear-

ings, which involve more serious rule violations.[8] An inmate is served with notice of the disciplinary charge at least twenty-four hours prior to the hearing and within thirty days of the discovery of the alleged violation. An inmate has the right to present documentary evidence and to request witnesses in his defense. An inmate has the right to a counsel substitute, a non-attorney designated to assist the inmate or represent him at the hearing. *South Carolina Department of Corrections Manual for Operations,* Inmate Disciplinary System, No. OP–22.14.

An inmate may hear all evidence presented at the hearing unless the disciplinary hearing officer determines that hearing the evidence will jeopardize prison security or the life or safety of other persons. Counsel substitute is permitted to remain and act on the inmate's behalf if the inmate is excluded from any portion of the hearing. *Id.* The disciplinary hearing officer must decide whether an inmate is guilty based on a preponderance of the credible evidence. *Id.*

Disciplinary hearings are tape-recorded. Department gives an inmate limited access to the recordings, which are kept for 180 days before being recycled. *Id.*

When an inmate is found guilty, the officer must prepare a written report containing, among other things, the evidence presented and considered, the reasons for a determination of guilt, the reasons for imposing a particular penalty, the reasons for excluding the accused inmate from any portion of the hearing, and the reasons for excluding any witnesses or evidence. *Id.* Possible punishments include restricting the inmate to his cell, eliminating various privileges, or revoking credits that reduce the length of a sentence. *Id.*

---

**8.** Petitioner's case was classified as a "major" disciplinary proceeding in which he faced the potential loss of sentence-related credits. An inmate has no protected liberty interest in a "minor" disciplinary proceeding in which he does not face the potential loss of sentence-related credits, but only lesser penalties such as extra duty, loss of television privileges, or cell restriction. *See Wolff,* 418 U.S. at 571 n. 19, 94 S.Ct. at 2982 n. 19, 41 L.Ed.2d at 960 n. 19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges"). Nevertheless, we encourage Department to continue to provide all inmates a fair hearing under guidelines such as those established in its existing policies.

The warden reviews the disciplinary hearing officer's decision, and may approve, modify or reverse it. *Manual for Operations,* Inmate Disciplinary System, No. OP–22.14. If an inmate is dissatisfied with the decision, he must file an appeal within fifteen days of receiving the written decision of the disciplinary hearing officer. *Id.* Department requires the disciplinary hearing officer to inform an inmate of the right to appeal a finding of guilt and the penalty imposed. *Id.*

An inmate appeals the decision by initiating a grievance. *South Carolina Department of Corrections Manual for General Administration,* Inmate Grievance System, No. GA–01.12. The matter is reviewed by the institutional inmate grievance coordinator, who recommends a course of action to the prison warden after interviewing affected employees and inmates. The warden must respond to the inmate in writing within a specified period. The inmate may appeal the warden's decision to the appropriate deputy director, inspector general, or general counsel of Department. That person's response is Department's final decision in the matter. *Id.*

We hold that Department's disciplinary and grievance procedures are consistent with the standards delineated by the Supreme Court in *Wolff v. McDonnell, supra.* We note that Department also prepared its grievance procedures in compliance with the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. §§ 1997–1997j (1994 & Supp.1999); *see also* 28 C.F.R. §§ 40.1 to 40.22 (1998) (standards for inmate grievance procedures).

## (3) APPLICATION OF THE APA

We concluded in Section A that PCR no longer is an appropriate route to obtain review of Department's final decision in a non-collateral or administrative matter. Review, although limited in scope, must be provided in some form. The most practical and obvious solution is that Department's final decisions, like those of other agencies, are subject to review pursuant to the APA. Accordingly, we hold, as stated above, that an inmate may seek such review under the APA. Other states have taken a similar approach.[9]

---

9. *See Owen v. Matsumoto,* 859 P.2d 1308 (Alaska 1993) and *Department of Corrections v. Kraus,* 759 P.2d 539 (Alaska 1988) (inmate may obtain

The APA outlines a variety of rights and procedures available to the parties in a contested case decided by an administrative agency. *See* S.C.Code Ann. § 1–23–320 to –370 (1986 & Supp.1999). For example, a party may cause depositions to be taken and the agency may, on its own behalf or on behalf of a party, issue subpoenas requiring the attendance of witnesses or the production of records.

■ We agree in part with courts in other states that have found many APA provisions obviously were not written with the unique concerns of a prison disciplinary system in mind.[10] Given our conclusion that Department's disciplinary and grievance procedures comply with the minimal due process re-

judicial review of major prison disciplinary actions under APA, but must challenge sentence calculations in PCR); *Armistead v. Phelps*, 365 So.2d 468 (La.1978) (inmate may obtain judicial review of disciplinary proceeding under APA); *Bryant v. Department of Pub. Safety and Corr. Serv.*, 33 Md.App. 357, 365 A.2d 764, 767 (1976) (inmate may obtain judicial review of outcome of grievance proceeding under APA); *Dailey v. Nebraska Dep't of Correctional Servs.*, 6 Neb.App. 919, 578 N.W.2d 869, 876 (1998) (statute allows inmate to obtain judicial review of prison disciplinary outcomes, but provides that APA does not apply to internal prison disciplinary process); *Brown v. Tennessee*, 928 S.W.2d 453, 457 (Tenn.Crim.App.1996) (inmate not receiving jail credits he is entitled to by law should proceed under the APA).

10. Courts in several states either have declined to the apply their APA provisions to the prison system at all, or applied them in a limited manner. *Wycoff v. Iowa District Court for Lee County*, 580 N.W.2d 786 (Iowa 1998) (inmate may not seek judicial review of prison disciplinary proceeding under APA, but may do so in certain cases in PCR); *Walen v. Department of Corrections*, 443 Mich. 240, 505 N.W.2d 519, 521–22 (1993) (explaining legislature exempted prison system from some, but not all, APA provisions after appellate court held disciplinary proceedings were contested cases under the APA); *L'Heureux v. State Dep't of Corrections*, 708 A.2d 549, 551–53 (R.I.1998) (APA provisions were not designed to apply to disciplinary proceedings within a volatile prison population; nor does APA apply to classification proceedings or rulemaking); *Dawson v. Hearing Comm.*, 92 Wash.2d 391, 597 P.2d 1353 (1979) (en banc) (prison disciplinary proceedings are not subject to judicial review under APA because they lie outside scope and intent of act); *Rose v. Arizona Dep't of Corrections*, 167 Ariz. 116, 804 P.2d 845, 848–49 (Ct.App.1991) (APA does not apply to prison disciplinary proceedings and inmate may not obtain judicial review under APA; inmate may obtain review by "special action"); *Canady v. Reynolds*, 880 P.2d 391, 398 (Okla.Crim.App.1994) (inmates may not challenge prison system's calculation of sentencing credits under APA because system was exempted from that act).

quired in such proceedings, we decline to apply the following APA provisions to the internal prison disciplinary process: S.C.Code Ann. § 1–23–320 (Supp.1999) (notice and hearing in contested case, depositions, subpoenas, informal disposition, content of record); S.C.Code Ann. § 1–23–330 (1986) (evidentiary matters in contested cases); S.C.Code Ann. § 1–23–340 (1986) (procedure in contested case where majority of those who are to render final decision are unfamiliar with the case); and S.C.Code Ann. § 1–23–360 (1986) (communication by members of agency assigned to decide contested case).

■■■ We also decline to apply those same APA provisions to the internal decision-making process used when an inmate alleges Department has miscalculated his sentence, sentence-related credits, or custody status. Initiating a grievance is the method an inmate uses to challenge such decisions within the prison system. The grievance procedure Department has established is sufficient to give an inmate a method to raise the matter to prison officials and create a reviewable record.[11]

We find this approach appropriate because Department is an agency for purposes of the APA. S.C.Code Ann. § 1–23–310(2) (Supp.1999) (" '[a]gency' means each state board, commission, department or officer, other than the legislature or the courts, but to include the administrative law judge division, authorized by law to determine contested cases"). An inmate brings a contested case for purposes of judicial review when he challenges a disciplinary outcome, calculation of sentence-related credits, custody status, or other condition of imprisonment. S.C.Code Ann. § 1–23–310(3) (Supp.1999) (" '[c]ontested case' means a proceeding . . . in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing").

---

11. Further support for not applying these APA provisions to Department's internal disciplinary or decision-making processes is evident in the Legislature's decision to exempt Department from submitting its internal regulations on the care and custody of inmates for legislative review and approval. S.C.Code Ann. § 1–23–10(4) (Supp.1999). That exemption indicates the Legislature intended to give Department ample latitude to control its internal affairs.

■ Contrary to Department's contention, a hearing is required by law when an inmate faces the potential loss of sentence-related credits, and Department properly has chosen to give an inmate a hearing in other matters in which the inmate does not have a constitutionally protected liberty interest. *See Wolff v. McDonnell, supra;* footnote 7; *accord* S.C. Const. art. I, § 22 (providing for notice, an opportunity to be heard, an impartial adjudicator, and judicial review when an administrative agency makes a judicial or quasi-judicial decision affecting private rights).

### (4) APPEAL TO THE ADMINISTRATIVE LAW JUDGE DIVISION

■ The Legislature created the Administrative Law Judge Division (ALJ Division), a part. of the executive branch, in 1993. S.C.Code Ann. §§ 1–23–500 to –660 (Supp.1999). The ALJ Division has established Rules of Procedure, as authorized by S.C.Code Ann. § 1–23–650 (Supp.1999).

The ALJ Division's Rules of Procedure (ALJDRP) provide for the hearing of contested cases by an administrative law judge (ALJ). Rules 8–32, ALJDRP; *see also* S.C.Code Ann. § 1–23–600(B) (Supp.1999) (stating an ALJ "shall preside over all hearings of contested cases as defined in Section 1–23–310 involving the departments of the executive branch of government in which a single hearing officer is authorized or permitted by law or regulation to hear and decide such cases"). We decline, as we did with certain APA provisions discussed above, to apply these contested case rules to non-collateral and administrative matters decided by Department. Department's procedures provide a sufficient method of resolving administrative matters pertaining to inmates without the need for a contested-case hearing before an ALJ.

■ An inmate may, however, seek review of Department's final decision by an ALJ in a non-collateral or administrative matter. *Cf. Bennett v. South Carolina Dep't of Corrections,* 305 S.C. 310, 408 S.E.2d 230 (1991) (statutory requirements proffering administrative remedy and requiring exhaustion before seeking judicial review mean administrative agency has exclusive right to decide issues before it, subject only to appeal for judicial review of its decision).

The ALJ sits in an appellate capacity to review Department's decisions. *Cf. Reliance Ins. Co. v. Smith*, 327 S.C. 528, 534, 489 S.E.2d 674, 677 (Ct.App.1997) (explaining that ALJ is not restricted to merely reviewing decision below when hearing a contested case, which is in the nature of a *de novo* hearing; thus indicating the converse proposition that an ALJ is restricted to reviewing the decision below when acting in an appellate capacity).

The inmate must file and serve a notice of appeal upon specified parties within thirty days of receipt of written notice of Department's final decision. Rule 33, ALJDRP. Department shall inform an inmate in writing of the right to seek review by an ALJ, just as it informs an inmate of the right to appeal within the prison system.

The notice of appeal must contain a general statement of the grounds for appeal and other required information. Rule 33, ALJDRP. Department must file the record, which must contain, among other things, all pleadings, evidence received or considered, and the final order with the ALJ Division within thirty days of receipt of the notice of appeal. *Id.* In major prison disciplinary proceedings, the record must include pertinent portions of the tape recording of the hearing or a properly transcribed record of the hearing. *See* Rules 35 and 37, ALJDRP (ordering and filing of transcript and record on appeal); *cf. McGinnis v. Stevens*, 543 P.2d 1221, 1236 (Alaska 1975) (requiring verbatim tape recording of hearing for use in judicial review of disciplinary proceeding).

The parties must prepare the specified briefs. Rule 36, ALJDRP. An appeal may be dismissed on the motion of any party, or on the motion of an ALJ, for failure to comply with procedural rules or applicable time limits. Rule 38, ALJDRP. The ALJ may hear oral arguments, but "[i]n the discretion of the [ALJ], oral argument may not be required." Rule 39, ALJDRP. The ALJ "shall render a decision in a written order which shall be served on all parties and filed with the clerk of the [ALJ] Division." Rule 40, ALJDRP.

(5) REVIEW BY THE JUDICIAL BRANCH

An inmate is entitled to judicial review of the final decision in a non-collateral or administrative matter, which

includes a disciplinary hearing. "[T]hough his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell,* 418 U.S. at 555–56, 94 S.Ct. at 2974, 41 L.Ed.2d at 950; *accord* S.C. Const. art. I, § 22; *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (prisoners have a constitutional right of access to the courts, although that right is not absolute); *see also Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606, 620 (1996) (reaffirming inmates' basic right of access to the courts, but disapproving of certain broad language in *Bounds v. Smith* and explaining that the tools the state must provide are those which inmates "need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement").

To obtain judicial review of the ALJ's final decision, "a petition by an aggrieved party must be filed with the Circuit Court and served on the opposing party not more than thirty days after the party receives the final decision and order of the administrative law judge. Appeal in these matters is by right." S.C.Code Ann. § 1–23–610(B) (Supp.1999); *accord* S.C.Code Ann. § 1–23–380(A)(1) (Supp.1999). The petition may be filed in any circuit court as long as the chosen forum is neither arbitrary nor unreasonable, and provided that no statute controls venue in a particular type of case. *Williams v. South Carolina Dep't of Wildlife,* 295 S.C. 98, 99, 367 S.E.2d 418, 419 (1987), *overruled on other grounds, Dove v. Gold Kist, Inc.,* 314 S.C. 235, 442 S.E.2d 598 (1994); *1972 Capri v. South Carolina Dep't of Highways and Pub. Transp.,* 274 S.C. 88, 91, 261 S.E.2d 307, 308 (1979).

The appellant must file a copy of the notice of appeal from the ALJ's decision with the clerk of the ALJ Division. Upon receipt of that notice, the clerk must transmit the record or a certified copy of the record of the agency proceedings which were the subject of the appeal to the reviewing authority. Rule 41, ALJDRP. In major prison disciplinary proceedings, the record must include pertinent portions of the tape recording of the hearing or a properly transcribed record of

the hearing. *Cf. McGinnis v. Stevens*, 543 P.2d at 1236 (requiring verbatim tape recording of hearing for use in judicial review of disciplinary proceeding).

 The inmate's petition to the circuit court must distinctly and specifically direct the court's attention to the errors or abuses allegedly committed by the ALJ. It must include all that is necessary to enable the circuit court to decide whether the ALJ made an erroneous or unsubstantiated ruling. A mere expression of dissatisfaction with the ruling is not sufficient. *See Smith v. South Carolina Dep't of Social Servs.*, 284 S.C. 469, 327 S.E.2d 348 (1985). In reviewing a final decision of the ALJ, as when reviewing a final decision of an agency, the circuit court essentially sits as an appellate court to review alleged errors committed by the ALJ. *See Kiawah Resort Associates v. South Carolina Tax Comm'n*, 318 S.C. 502, 505, 458 S.E.2d 542, 544 (1995); S.C.Code Ann. § 1–23–310(2) (Supp.1999) (defining "agency" to include ALJ Division). Consequently, issues or arguments that were not raised to and ruled on by the ALJ ordinarily are not preserved for review. *Kiawah Resort Associates, supra.*[12]

The APA establishes the standard of review and the court's authority in reviewing the ALJ's decision:

> The review of the administrative law judge's order must be confined to the record. The reviewing tribunal may affirm the decision or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioner has been prejudiced because of the finding, conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;

---

12. When an inmate challenges the constitutionality of a statute, Department and the ALJ must follow the statute and leave the question of whether it is constitutional to the courts. *See Beaufort County Bd. of Educ. v. Lighthouse Charter School Committee*, 335 S.C. 230, 516 S.E.2d 655 (1999) ("[a]n administrative agency must follow the law as written until its constitutionality is judicially determined; an agency has no authority to pass on the constitutionality of a statute") (citing *South Carolina Tax Comm'n v. South Carolina Tax Bd. of Review*, 278 S.C. 556, 299 S.E.2d 489 (1983)). We do not decide whether an inmate must raise the issue of whether a statute is unconstitutional to Department and the ALJ before it is preserved for review by the circuit court.

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–610(D) (Supp.1999); *accord* S.C.Code Ann. § 1–23–380(A)(6) (Supp.1999).

 It has long been established that the court may not substitute its judgment for that of an agency on questions of fact when those facts are supported by substantial evidence. *E.g., Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 307 (1981); *Board of Bank Control v. Thomason,* 236 S.C. 158, 165–67, 113 S.E.2d 544, 547–48 (1960). The court must apply the same principle in reviewing the ALJ's final decision in an administrative matter.

 Substantial evidence is relevant evidence that, considering the record as a whole, a reasonable mind would accept to support an administrative agency's action. Substantial evidence exists when, if the case were presented to a jury, the court would refuse to direct a verdict because the evidence raises questions of fact for the jury. It is more than a mere scintilla of evidence, but is something less than the weight of the evidence. Furthermore, the possibility of drawing two inconsistent conclusions from the evidence does not prevent a court from concluding that substantial evidence supports an administrative agency's finding. *Porter v. South Carolina Pub. Serv. Comm'n,* 333 S.C. 12, 507 S.E.2d 328, 332 (1998); *Lark v. Bi–Lo, Inc., supra.* To afford meaningful judicial review, the ALJ must adequately explain the decision by documenting the findings of fact and basing the decision on reliable, probative, and substantial evidence on the whole record. *See Porter v. South Carolina Pub. Serv. Comm'n, supra; cf.* S.C.Code Ann. § 1–23–350 (1986).

 While the substantive content of the petition must sufficiently explain the basis of the inmate's challenge, the circuit court, as in PCR proceedings, has the discretion to construe a pleading in the appropriate manner. *See Gibson v. State,* 329 S.C. at 41, 495 S.E.2d at 428 (habeas corpus petition

may be construed as a PCR application); *Hunter v. State*, 316 S.C. 105, 447 S.E.2d 203 (1994) (same), *abrogated on other grounds by Simpson v. State*, 329 S.C. 43, 495 S.E.2d 429 (1998). An informal format or improperly titled petition ordinarily should not form the basis for summary dismissal.

Nevertheless, an inmate must ensure that his claim or appeal is not malicious, frivolous, or false. A judicial finding of such conduct may result in the forfeiture of good-time, work, or education credits. S.C.Code Ann. §§ 24–27–200 to – 220 (Supp.1999).

 An aggrieved party may obtain appellate review of any final judgment of the circuit court in the manner prescribed for civil cases. S.C.Code Ann. § 1–23–390 (1986). The party must properly serve a notice of appeal within thirty days after receipt of written notice of entry of the order or judgment. Rule 203(b)(1), SCACR.

At first glance, our decision today appears to conflict with precedent because we establish a method of judicial review in cases in which we previously determined an inmate usually does not have a protected liberty interest. *See Brown v. Evatt*, 322 S.C. 189, 470 S.E.2d 848 (1996) (inmate has no liberty interest in a particular custody status as long as the challenged conditions or degree of confinement are within the sentence imposed and are not otherwise violative of the Constitution) (citing *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)); *Crowe v. Leeke*, 273 S.C. 763, 259 S.E.2d 614 (1979) (transfer within prison system or downgrading of custody status is not subject to judicial review as long as prison officials do not act arbitrarily, capriciously, or from personal bias or prejudice).

*Brown* and *Crowe* do not stand for the proposition that judicial review is improper or unavailable. To the contrary, those cases teach that such review must be available to determine whether "the challenged conditions or degree of confinement are within the sentence imposed and are not otherwise violative of the Constitution," or whether prison officials have acted arbitrarily, capriciously, or from personal bias. *Brown*, 322 S.C. at 194, 470 S.E.2d at 851; *Crowe*, 273 S.C. at 764, 259 S.E.2d at 615.

We emphasize, however, that we continue to endorse the limited nature of judicial review manifest in *Brown* and *Crowe*. Courts traditionally have adopted a "hands off" doctrine regarding judicial involvement in prison disciplinary procedures and other internal prison matters, although they must intercede when infringements complained of by an inmate reach constitutional dimensions. *Pruitt v. State*, 274 S.C. at 567–68, 266 S.E.2d at 780. We intend to adhere to this "hands off" doctrine when reviewing the outcome of any major or minor disciplinary hearing in which an inmate has a protected liberty interest due to the potential loss of sentence-related credits. In addition, the process due an inmate—as well as the level of judicial scrutiny—in a custody status case or a minor disciplinary hearing in which an inmate does not face the loss of sentence-related credits is further limited by the fact that neither of those matters is a protected liberty interest within the scope of the Fourteenth Amendment.

In its rehearing brief, Department states that its staff resolved 45,300 instances of offender misconduct, 79,300 custody and classification decisions, and 17,000 grievance hearings in the past year. Department fears that appeals in these cases may swamp it and the court system. We are not persuaded by this "floodgate" argument. Our decision today does not open courthouse doors that previously were locked. It merely modifies the method by which an inmate must enter those doors. Furthermore, we again emphasize that an inmate who raises malicious, frivolous, or false assertions in a petition to the circuit court faces additional sanctions under S.C.Code Ann. §§ 24–27–200 to –220 (Supp.1999).

In sum, we encourage Department to promptly and fairly resolve administrative matters raised by inmates. Department must create a record and adequately explain its decision to afford meaningful review by the ALJ Division under the APA. The ALJ must, in turn, adequately explain his or her decision to afford meaningful review by the judicial branch. When substantial evidence supports the decision reached by the ALJ, neither the circuit nor appellate courts may substitute their judgment for the ALJ's on these internal prison matters.

A criminal justice system must include a fair, reasonable, and efficient means of addressing these administrative matters. We recognize that Department's officials and employees are well-versed on what it takes to run a safe and efficient prison system as the world enters the next millennium. They are the experts upon which we all pin our hopes that prisoners not only will be punished for their crimes, but also rehabilitated before they are someday released to live again among law-abiding citizens.[13]

We also recognize that errors and omissions, whether caused by bureaucratic oversight, a misunderstanding of the law, or an intentional act, are likely to occur in a system that closely controls the lives of some 21,500 inmates[14] on any given day. While we are confident Department properly will resolve most matters without the need for either ALJ or judicial review, that review must be available. *See Bounds v. Smith, supra.* We believe our decision today will further the fair and prompt resolution of administrative matters in the prison system and the courts.

## C. PETITIONER'S CASE

Petitioner's claims involve his custody status and the loss of good-time credits incurred as a result of a major disciplinary proceeding. His claims are non-collateral or administrative matters that may not be raised in a PCR application. Petitioner must have a chance to seek review under the APA in the manner outlined above after Department reaches its final decision. Accordingly, we vacate the summary dismissal of petitioner's case and remand it to Department for proceedings consistent with this opinion.

### CONCLUSION

We hold that the PCR process is restricted to collateral attacks challenging the validity of a conviction or sentence, except for two non-collateral matters specifically listed in the

---

13. In a recent year, 11,321 inmates were admitted into the prison system and 10,927 inmates were released. Department's *Annual Report, 1997–98* at 27.

14. Department's *Annual Report, 1997–98* at 26.

PCR Act. We further hold that an inmate may obtain review of Department's final decision in non-collateral or administrative matters under the APA in the manner we have outlined. However, the specified APA provisions and the specified ALJ Division Rules of Procedure do not apply to the internal prison disciplinary or decision-making processes.

Our decision shall apply to all PCR actions filed and all administrative matters in which Department renders a final decision after the date of this opinion. It also shall apply to all cases currently pending in circuit court or before this Court in which the inmate is similarly situated to petitioner, i.e., cases in which Department has decided a non-collateral or administrative matter and the inmate has not had the opportunity to obtain APA review in the manner we have outlined. Those cases shall be remanded to Department for further proceedings consistent with this opinion.

VACATED AND REMANDED.

TOAL, MOORE, and BURNETT, JJ., concur.

FINNEY, C.J., concurring in a separate opinion.

FINNEY, Chief Justice:

I write separately to explain that while I have decided to concur in the result reached here, I do so with great reluctance. I join the majority only because we need to bring finality to this confused area of the law, and not because I agree with the method chosen here. In my view, the majority opinion is fundamentally flawed in that it simply ignores the third clause of S.C.Code Ann. § 17–27–20(a)(5) (1985), which provides for a post-conviction relief action to be brought by one claiming that "... **he is otherwise unlawfully held in custody or other restraint.**" Without doubt, this provision encompasses claims such as those brought by petitioner and other inmates challenging conditions of confinement. In the interest of judicial harmony, however, I reluctantly concur in the result reached by the majority.