576 S.E.2d 180

**BEAUFORT COUNTY BOARD OF EDUCATION,**
**Respondent/Appellant,**

v.

**LIGHTHOUSE CHARTER SCHOOL COMMITTEE and**
**State of South Carolina ex rel. Charles M. Condon,**
**Attorney General, Appellants/Respondents.**

No. 25583.

Supreme Court of South Carolina.

Heard April 16, 2002.

Reheard Dec. 4, 2002.

Decided Jan. 27, 2003.

---

George E. Mullen and Michael S. Seekings, both of Mullin, Wylie & Seekings, of Hilton Head, for appellant/respondent Lighthouse Charter School Committee.

Attorney General Charles M. Condon, Deputy Attorney General Treva G. Ashworth, and Assistant Deputy Attorney

General J. Emory Smith, all of Columbia, for appellant/respondent State of South Carolina.

Kenneth L. Childs, William F. Halligan, John M. Reagle, and Keith R. Powell, all of Childs & Halligan; and Charles J. Boykin, of Duff, Turner, White & Boykin, L.L.C., all of Columbia, for respondent/appellant Beaufort County Board of Education.

Justice MOORE:

This appeal is from an order striking down as unconstitutional the racial composition requirement of S.C.Code Ann. § 59–40–50(B)(6) (Supp.2001), originally enacted as part of the Charter Schools Act of 1996, and finding it unseverable from the remainder of the Act. Because the legislature has substantially amended this provision, we vacate the order of the circuit court.

## FACTS

In 1996, appellant/respondent Lighthouse Charter School Committee (Lighthouse) submitted to respondent/appellant (Board) an application for a local charter school on Hilton Head Island. The Board denied the application on the ground Lighthouse failed to meet several requirements of the Charter Schools Act, including the racial composition requirement found in the original version of § 59–40–50(B)(6) which provided in pertinent part: "under no circumstances may a charter school enrollment differ from the racial composition of the school district by more than ten percent."

The case first reached this Court on appeal in 1999. We affirmed the denial of Lighthouse's application but remanded for the circuit court to consider whether the racial composition requirement was unconstitutional as a violation of equal protection. *Beaufort County Bd. of Educ. v. Lighthouse Charter Sch. Comm.*, 335 S.C. 230, 516 S.E.2d 655 (1999). On remand, the circuit court found the racial composition requirement of § 59–40–50(B)(6) violated equal protection and this provision was not severable from the remainder of the Act. Accordingly, the Charter Schools Act in its entirety was declared unconstitutional.

Lighthouse and the Attorney General appealed the circuit court's ruling on severability; the Board cross-appealed on the constitutional issue. While the appeal was pending, 2002 S.C. Act No. 265 was signed by the Governor on May 20, 2002. This Act amended the Charter Schools Act by adding a severability clause but did not change the existing racial composition requirement. On July 1, 2002, however, the Governor signed a second Act, 2002 S.C. Act No. 341, which rewrote several provisions of the Charter Schools Act including the racial composition requirement originally found in § 59–40–50(B)(6). Under Act No. 341, the Charter Schools Act now provides:

§ 59–40–50(B) A charter school must:

(7) admit all children eligible to attend public school in a school district to a charter school operating in that school district, subject to space limitations. However, *it is required that the racial composition of the charter school enrollment reflect that of the school district or that of the targeted student population which the charter school proposes to serve, to be defined for the purposes of this chapter as differing by no more than twenty percent from that population. This requirement is also subject to the provisions of Section 59–40–70(D).* If the number of applications exceeds the capacity of a program, class, grade level, or building, students must be accepted by lot, and there is no appeal to the sponsor.

Further, the new Act provides under § 59–40–70(D):

In the event that the racial composition of an applicant's or charter school's enrollment differs from the enrollment of the local school district or the targeted student population by more than twenty percent, despite its best efforts, the local school district board shall consider the applicant's or the charter school's recruitment efforts and racial composition of the applicant pool in determining whether the applicant or charter school is operating in a nondiscriminatory manner. *A finding by the local school district board that the applicant or charter school is operating in a racially discriminatory manner may justify the denial of a charter school application or the revocation of a charter as provided herein or in Section 59–40–110, as may be applicable. A finding by the local school district board that the applicant*

*is not operating in a racially discriminatory manner shall justify approval of the charter without regard to the racial percentage requirement if the application is acceptable in all other aspects.*

(Emphasis added). This second amendment also includes a severability clause.

## ISSUE

What effect do the amendments to the Charter Schools Act have on this case challenging the constitutionality of the original racial composition clause?

## DISCUSSION

 Act No. 341 applies generally to the "organization, operation, and governance" of all charter schools. As the latest enactment, it is the controlling legislation governing the charter application process and pre-existing charter schools. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (later legislation takes precedence over earlier). The racial composition provision originally found in § 59–40–50(B) has been superseded, not only here where Lighthouse is still in the application process, but also regarding existing schools which must comply with Act No. 341 as well. Accordingly, there is no reason for us to issue an opinion ruling on the constitutionality of the original racial composition provision.

Further, the new provisions regarding racial composition, §§ 59–40–50(B)(7) and –70(D), are substantially different in effect from the original provision. The original provision stated that "under no circumstances" could the racial composition of a charter school differ by more than ten percent from the district population. Under Act No. 341, the provision found in § 59–40–70(D) excuses the new twenty-percent racial composition requirement entirely if the charter school is not operating in a racially discriminatory manner. These new provisions have changed the character of the racial composition requirement by injecting a fact-based determination regarding discrimination rather than mandating a straightforward racial quota.

Because the original provision under which this case was brought is no longer applicable and the new requirements under Act No. 341 are substantially different, we vacate the order of the circuit court and dismiss this appeal as moot. *Cf. Peterson Outdoor Advertising Corp. v. Beaufort County,* 291 S.C. 533, 354 S.E.2d 563 (1987) (repeal or amendment of zoning ordinance during appeal renders the appeal moot). Lighthouse may continue the application process under the applicable provisions of Act No. 341.

**VACATED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.