649 S.E.2d 35

**James FURTICK, Appellant**

v.

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Respondent.**

**No. 26270.**

Supreme Court of South Carolina.

Submitted Jan. 18, 2007.

Decided July 30, 2007.

James Furtick, pro se, of Bennettsville, for Appellant.

Barton J. Vincent, Deputy General Counsel, of Columbia, for Respondent.

Justice WALLER.

This is a direct appeal from the circuit court's order affirming the Administrative Law Court's (ALC) summary dismissal of appellant James Furtick's prison grievance matter. After we issued our original opinion in which we reversed, *Furtick v. S.C. Dep't of Corrections*, Op. No. 26270 (S.C. Sup.Ct. filed February 20, 2007) (Shearouse Adv. Sh. No. 6 at 89), respondent filed a petition for rehearing. We now withdraw our original opinion and issue this opinion. We deny respondent's petition for rehearing and reverse the circuit court's decision.

## FACTS

In 2001, when Furtick was an inmate at Lee Correctional Institution, the Department of Corrections (DOC) charged him with possession of contraband.[1] After a major disciplinary hearing was held, Furtick was found guilty of the offense and reprimanded. As a result of the reprimand, Furtick alleges he did not earn his good time credit for the month of the infraction. Furtick appealed from this disciplinary decision through the DOC's internal grievance system; the DOC denied his grievance.

Furtick appealed the denial of his grievance to the ALC, and the DOC moved to dismiss the action based on a lack of subject matter jurisdiction. Finding that Furtick had no liberty interest in good time credits which he was unable to earn as a result of a rule violation, the ALC dismissed the matter.

Furtick sought review from the circuit court. The circuit court also found no liberty interest was implicated and therefore affirmed the ALC's decision.

---

1. According to Furtick, DOC guards entered his cell and seized numerous items of property, including his typewriter, various office supplies, and bleach. It appears the possession of contraband rule infraction was based on the possession of bleach.

## ISSUE

Did the circuit court err in finding the ALC lacked jurisdiction over Furtick's claim?

## DISCUSSION

■ Furtick argues that the circuit court erred by finding that the ALC lacked subject matter jurisdiction to review his grievance. We agree.

Through statute, the State provides that an inmate is "entitled to a deduction from the term of his sentence" if he "faithfully observe[s] all the rules of the institution and has not been subjected to punishment for misbehavior." S.C.Code Ann. § 24–13–210(A) (2007). However, "[i]f a prisoner . . . violates one of the rules of the institution during his term of imprisonment, all or part of the good conduct credit he has earned may be forfeited in the discretion of the Director of the Department of Corrections." Id. § 24–13–210(D).

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court explained that inmates have certain due process rights when good time credits are at issue:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. . . . [The State] may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest.". . . But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

Id. at 557, 94 S.Ct. 2963 (citation omitted); *see also Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (the States may, under certain circumstances, create

liberty interests which are protected by the Due Process Clause); *Henderson v. Comm'rs of Barnstable County*, 49 Mass.App.Ct. 455, 730 N.E.2d 362, 370 (2000) ("The entitlement to statutory good time credit is a liberty interest.").

The USSC noted in *Wolff* that punishment in the form of "the forfeiture **or withholding** of good-time credits" affects the term of confinement. *Wolff*, 418 U.S. at 547, 94 S.Ct. 2963 (emphasis added). Additionally, in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the USSC specifically stated the following: "Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily."

In *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), we acknowledged that "[t]he statutory right to sentence-related credits is a protected 'liberty' interest under the Fourteenth Amendment, entitling an inmate to minimal due process to ensure the state-created right was not arbitrarily abrogated." Id. at 370, 527 S.E.2d at 750 (citing *Wolff*, *supra*). We held in *Al–Shabazz* that the DOC's disciplinary and grievance procedures are consistent with the due process standards outlined by the USSC in *Wolff*. *See id.* at 372–73, 527 S.E.2d at 751–52 (for extensive discussion on the DOC's procedures for major disciplinary hearings). Moreover, we also held that an inmate generally could not raise a non-collateral claim, such as one involving the forfeiture of good-time credits, via the Post–Conviction Relief Act. Id. at 367–68, 527 S.E.2d at 749.

■ We held, however, that an inmate could pursue **review** of certain grievance decisions made by the DOC by filing an action in the ALC pursuant to the Administrative Procedures Act (APA). The *Al–Shabazz* Court stated that when an inmate challenges a disciplinary outcome, calculation of sentence-related credits, custody status, or other condition of imprisonment, he could bring "a contested case" under the APA. Id. at 375, 527 S.E.2d at 753. Thus, the ALC "sits in an appellate capacity to review" these types of decisions. Id. at 377, 527 S.E.2d at 754.

■ Furthermore, "[a]n inmate is entitled to judicial review of the final decision in a non-collateral or administrative matter, which includes a disciplinary hearing." Id. at 377–78, 527 S.E.2d at 754. We explained that judicial review must be available to determine "whether prison officials have acted arbitrarily capriciously, or from personal bias." Id. at 381, 527 S.E.2d at 756–57.

We emphasized in *Al–Shabazz* that any judicial review would be of a "limited nature" and that the courts of this State would adhere to a "hands off" doctrine when reviewing the decision from a major disciplinary hearing in which an inmate has a protected liberty interest due to the potential loss of sentence-related credits. Id. at 382, 527 S.E.2d at 757. Finally, the *Al–Shabazz* Court recognized that most of these matters would be resolved without either ALC or judicial review, but nonetheless held that such review "must be available." Id. at 383, 527 S.E.2d at 757.[2]

■ Several subsequent decisions have reiterated *Al–Shabazz*'s holding that the ALC has subject matter jurisdiction over an inmate's appeal when the claim sufficiently "implicates a state-created liberty interest." *Sullivan v. S.C. Dep't of Corrections*, 355 S.C. 437, 443, 586 S.E.2d 124, 127 (2003), cert. denied, 540 U.S. 1153, 124 S.Ct. 1155, 157 L.Ed.2d 1050 (2004); see also *Furtick v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 352 S.C. 594, 598, 576 S.E.2d 146, 149, cert. denied, 539 U.S. 932, 123 S.Ct. 2584, 156 L.Ed.2d 612 (2003) (in deciding whether Respondent was entitled to **review** of the Department's parole eligibility decision, the Court evaluated whether Respondent had a liberty interest in gaining access to the parole board); *Steele v. Benjamin*, 362 S.C. 66, 606 S.E.2d 499 (Ct.App.2004) (the ALC's subject matter jurisdiction depends on whether there is a sufficient, state-created liberty interest implicated).

---

2. As to the facts of the petitioner's claims in *Al–Shabazz*, they involved his custody status and the loss of good-time credits incurred as a result of a major disciplinary proceeding. We held that these claims were non-collateral or administrative matters that could not be raised in a PCR application, but could be reviewed under the APA after the DOC reached its final decision. *Al–Shabazz*, 338 S.C. at 383, 527 S.E.2d at 757.

■ Furthermore, in *Slezak v. S.C. Dep't of Corrections*, 361 S.C. 327, 605 S.E.2d 506 (2004), cert. denied, 544 U.S. 1033, 125 S.Ct. 2266, 161 L.Ed.2d 1060 (2005), we clarified that the ALC has jurisdiction over **all** inmate grievance appeals that have been properly filed; the ALC, however, is not required to hold a hearing in every matter. We stated in *Slezak* that summary dismissal would only be appropriate "where the inmate's grievance does not implicate a state-created liberty or property interest." Id. at 331, 605 S.E.2d at 508. Thus, where a matter clearly implicates a loss of statutory sentence-related credits, the ALC may not summarily dismiss the action.[3]

■ Turning now to the instant case, we reiterate that the State of South Carolina clearly has created a liberty interest in good-time credits by enacting section 24–13–210. Without a doubt, these credits for good behavior may be withheld or revoked as punishment when an inmate commits an offense while incarcerated or otherwise violates the rules of the institution. S.C.Code Ann. § 24–13–210(D). Nonetheless, such a loss of good-time credits is reviewable by the ALC pursuant to *Al–Shabazz* and its progeny. The matter is reviewable because the loss of good-time credits sufficiently "implicates a state-created liberty interest." *Sullivan*, 355 S.C. at 443, 586 S.E.2d at 127. When a state-created liberty interest is implicated, the inmate is entitled to certain due process rights. *Wolff, supra.* While the DOC's disciplinary policies comport with those due process requirements, the purpose of allowing review is to ensure that due process was, in fact, accorded to the inmate and the inmate's right to the statutory credit was not "arbitrarily abrogated." *Wolff,* 418 U.S. at 557, 94 S.Ct. 2963; *accord Al–Shabazz, supra.*

We emphasize, however, that inmate litigation itself must comport with certain standards. If a court finds a prisoner has: (1) submitted a malicious or frivolous claim, or one that is intended solely to harass the party filed against; (2) testified falsely or otherwise presented false evidence or information to

---

3. Regarding Slezak's grievance which asserted that the prison's practice of "triple celling" constituted a security and health hazard to inmates, the *Slezak* Court remanded to the ALC for a hearing because it "adequately state[d] a violation of appellant's liberty interest." *Slezak,* 361 S.C. at 333, 605 S.E.2d at 508–09.

the court; (3) unreasonably expanded or delayed a proceeding; or (4) abused the discovery process; then the "prisoner shall forfeit all or part of his earned work, education, or good conduct credits in an amount to be determined" by the DOC. S.C.Code Ann. § 24–27–200 (2007); *see also Al–Shabazz,* 338 S.C. at 381, 527 S.E.2d at 756.

In this case, Furtick sought review from the ALC and such review was denied by both the ALC and circuit court. Accordingly, we reverse and remand to the ALC to hold a hearing on the denial of Furtick's grievance claim.

**REVERSED.**

MOORE, BURNETT and PLEICONES, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL.

I respectfully dissent. In my view, the majority's holding today ignores the legislative intent expressed by the clear and unambiguous language of S.C.Code Ann. §§ 24–13–210 and – 230. Further, I believe the majority discards our Court's long-standing "hands-off" approach to judicial supervision of internal prison disciplinary matters which do not amount to a violation of constitutional dimensions. In adopting its position, the majority has interjected our courts into every prison disciplinary matter which may result in an inmate's lost opportunity to earn sentence-related credits including a multitude of minor disciplinary infractions which, but for today's decision, would not otherwise trigger due process protections. Therefore, I would affirm the circuit court's decision finding that an inmate has no constitutionally significant interest in the loss of the opportunity to earn certain sentence-related credits. However, I would modify the circuit court's decision to reflect that the ALC has subject matter jurisdiction to review such inmate grievance matters and that the ALC may summarily decide these appeals without a hearing.

Under our statutory law, Furtick does not have any protected liberty interest in the loss of the opportunity to earn sentence-related credits. The United States Constitution does not provide an inmate with a guarantee of sentence-related credit for good behavior while incarcerated. *Wolff v. McDon-*

*nell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, in some instances, a state may create a liberty interest which is protected by the Due Process Clause of the Fourteenth Amendment. *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A state creates a liberty interest in sentence-related credits only where an inmate has a legitimate expectation of receiving such credits. *See Bd. of Pardons v. Allen,* 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). However, a liberty interest in sentence-related credits cannot be predicated on the unilateral expectation or hope to be released before the expiration of one's term. *See Montgomery v. Anderson,* 262 F.3d 641, 645 (7th Cir.2001). An inmate may obtain relief for the deprivation of sentence-related credits if he can demonstrate that "the State's action ... inevitably affect[ed] the duration of his sentence." *Sandin,* 515 U.S. at 487, 115 S.Ct. 2293. Generally, an inmate is not entitled to due process protection for State action that may only speculatively affect the duration of his sentence. Id.

S.C.Code Ann. § 24–13–210(A) provides:

A prisoner convicted of an offense against this State, except a "no parole offense" as defined in Section 24–13–100, and sentenced to the custody of the Department of Corrections including a prisoner serving time in a local facility pursuant to a designated facility agreement authorized by Section 24–3–30, whose record of conduct shows that he has faithfully observed all the rules of the institution where he is confined and has not been subjected to punishment for misbehavior, is entitled to a deduction from the term of his sentence beginning with the day on which the service of his sentence commences to run, computed at the rate of twenty days for each month served.

In *Busby v. Moore,* this Court found that the legislature intended § 24–13–210(A) to reward inmates with good-time credits only after they exhibit good behavior. 330 S.C. 201, 204, 498 S.E.2d 883, 884 (1998), *overruled in part on other grounds by Al–Shabazz v. State,* 338 S.C. 354, 369, 527 S.E.2d 742, 750 (2000). Additionally, this Court found that a prisoner's entitlement to good-time credits pursuant to § 24–13–210(A)

did not vest until the prisoner had served the appropriate amount of time and actually earned the credits. Id. at 204, 498 S.E.2d at 885.

In this case, Furtick was reprimanded for the violation of prison rules. A collateral result of this reprimand was that Furtick was ineligible to earn his good-time credits during the month in which he was reprimanded. Because Furtick did not lose any earned good-time credits as a result of the reprimand, in my view, we cannot say that the reprimand inevitably effected the duration of his sentence.

A myriad of considerations affect whether an inmate is released before the conclusion of the original sentence. In my view, Furtick's situation is markedly different from the situation where an inmate has already earned good-time credit and, by virtue of some punishment, is required to forfeit that credit. In that case, the inmate no longer possesses merely a unilateral hope of a sentence reduction, but actually possesses a vested right to the good-time credit and reduction in sentence. As we stated in *Al–Shabazz*, the withholding or forfeiture of earned good-time credit directly implicates a protected liberty interest. 338 S.C. at 370, 527 S.E.2d at 750. In contrast, the loss of the opportunity to earn good-time credit as a result of a prison rule violation does not implicate the same interest.

Because the statute grants inmates good-time credit only after inmates demonstrate good behavior, no inmate is guaranteed or has a vested right in the maximum accrual of good-time credit. Accordingly, I would find that an inmate does not have a legitimate expectation that he will receive good-time credits, but merely possesses only the hope that his behavior and observation of prison rules will be sufficient to entitle him to a reduction in his sentence. Based on the language in § 24–13–210(A) and our previous interpretation of the statute, I would hold that an inmate does not have a protected liberty interest in unearned good-time credits. To hold otherwise would clearly frustrate the purpose and intent of the legislature in enacting the statute.

An analysis of § 24–13–230(A) reveals a similar conclusion. The statute provides:

The Director of the Department of Corrections may allow any prisoner in the custody of the department, except a prisoner convicted of a "no parole offense" as defined in Section 24–13–100, who is assigned to a productive duty assignment or who is regularly enrolled and actively participating in an academic, technical, or vocational training program, a reduction from the term of his sentence of zero to one day for every two days he is employed or enrolled. A maximum annual credit for both work credit and education credit is limited to one hundred eighty days.

S.C.Code Ann. § 24–13–230(A).

Like § 24–13–210, I would find that § 24–13–230(A) is clear and unambiguous. In my opinion, the legislature's use of the word "may" indicates its intention that any reduction in sentence pursuant to § 24–13–230(A) be left to the discretion of DOC. *See Carolina Power & Light Co. v. Pageland,* 321 S.C. 538, 543, 471 S.E.2d 137, 140 (1996) (holding that when a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning). Stated differently, there is no mandatory requirement that any inmate receive a reduction in sentence under this statute. In fact, despite an inmate's participation in the programs outlined in the statute, DOC has the discretion to award no sentence reduction at all. Accordingly, I believe that any sentence reduction allowed pursuant to § 24–13–230(A) is not an unfulfilled entitlement, but is completely discretionary. *See Skipper v. South Carolina Dept. of Corrections,* 370 S.C. 267, 633 S.E.2d 910 (Ct.App.2006). Because an inmate is not entitled to earn credit at a particular level, in my view, an inmate has no protected liberty interest in maintaining a specific work credit level for sentence reduction purposes. *Cf. Altizer v. Paderick,* 569 F.2d 812, 813 (4th Cir.1978) (finding that classifications and work assignments are discretionary matters for prison administration and "to hold that they are 'within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business'" of the judiciary) (internal citations omitted).

Therefore, I would hold that the circuit court did not err in finding no implication of protected liberty interests in the loss of the opportunity to earn sentence-related credits pursuant to S.C.Code Ann. §§ 24–13–210 and –230.

Finally, while I agree with the majority that the circuit court erred in holding that the ALC lacked subject matter jurisdiction, I would find that no hearing was required under these circumstances. Pursuant to this Court's decision in *Slezak v. South Carolina Dept. of Corrections,* 361 S.C. 327, 331, 605 S.E.2d 506, 508 (2004), the ALC has jurisdiction over all properly perfected inmate appeals. However, the ALC may summarily decide those appeals that do not implicate an inmate's liberty or property interest and decline to hold a hearing. Id.

DOC does not dispute that Furtick has properly perfected his appeal. Therefore, in my view, the ALC erred in dismissing Furtick's case on the basis of lack of subject matter jurisdiction. *See State v. Gentry,* 363 S.C. 93, 100, 610 S.E.2d 494, 499 (2005) (noting that subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong). Because I would find that Furtick has no protected liberty interest in unearned sentence-related credits pursuant to S.C.Code Ann. §§ 24–13–210(A) and –230(A), I believe the ALC may have summarily decided his appeal without a hearing. Therefore, I would hold that the ALC's improper dismissal of Furtick's claim constitutes harmless error.

The federal courts have recognized that, for many prisoners, prolific litigation is a costless pastime. With today's decision, this Court unnecessarily throws open the door to judicial review of most any conceivable prison administrative matter virtually assuring this pastime will rapidly become all the more treasured.

Thus, with the modification described above, I would affirm the circuit court's decision.