733 S.E.2d 211

Stacy W. HOWARD, Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Respondent.

No. 27170.

Supreme Court of South Carolina.

Submitted Dec. 1, 2011.

Decided Sept. 12, 2012.

620

Stacy W. Howard, of Kershaw, pro se Appellant.

Christopher D. Florian, of Columbia, for Respondent.

Justice BEATTY.

Stacy Howard ("Appellant"), an inmate incarcerated with the South Carolina Department of Corrections ("SCDC"), appeals the Administrative Law Court's ("ALC's") summary dismissal of his appeal from a prison disciplinary conviction.

Appellant contends the SCDC's actions implicated a state-created liberty interest and, thus, the ALC erred in summarily dismissing his appeal pursuant to section 1–23–600(D) [1] of the South Carolina Code. Additionally, Appellant challenges: (1) the enforcement of the policy that formed the basis for the disciplinary conviction, (2) the procedure employed to procure the conviction, and (3) the factual basis underlying the conviction. We affirm as modified.

## I. Factual/Procedural History

On June 24, 2008, Appellant was cited with a disciplinary violation for "Unauthorized Services/Piddling (845) of SCDC Policy OP–22.14" [2] of the Inmate Disciplinary System. The citation was based on Appellant's preparation of a Post–Conviction Relief ("PCR") application for an illiterate inmate.

Appellant, who had been previously employed as a law library clerk, admitted that he had provided assistance to the inmate; however, he disputed that he offered "professional services." In support of this claim, Appellant submitted evidence that the law library was inadequate and the personnel were not trained to provide effective legal assistance. Based on these conditions, Appellant maintained that he provided assistance by reading the "proper law" to the inmate and filling out the PCR application with the inmate's "thoughts and contention[s]." Ultimately, Appellant challenged the SCDC's policy provision that barred inmates "from furnishing [legal] assistance to other prisoners" on the ground there was no "reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief."

After Appellant refused to accept an informal resolution of the incident, the matter was referred for a disciplinary hearing. Following a hearing, the Disciplinary Hearing Officer ("DHO") found Appellant guilty of the violation and issued a reprimand. This sanction resulted in Appellant's failure to

---

1. S.C.Code Ann. § 1–23–600(D) (Supp.2011) (outlining jurisdiction of the ALC for matters arising under the Administrative Procedures Act).

2. The policy provides, "No inmate shall attempt to provide professional services/handicrafts for any person for any reason whether it is for profit or not."

earn good-time credits[3] for the month of the disciplinary infraction and a reduction in earned-work credit[4] for that month[5] and subsequent months.[6] Appellant did not lose any accrued good-time credits due to his conviction.

Appellant challenged his conviction using the internal prison grievance procedures. After Appellant received the final agency decision denying his grievance, he appealed to the Administrative Law Court pursuant to *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000).

In response, the SCDC moved to dismiss the appeal on the ground the ALC lacked jurisdiction to review the matter. In support of this motion, the SCDC relied on a recently-enacted amendment to the South Carolina Administrative Procedures Act. The amendment[7] revised section 1–23–600(D) of the South Carolina Code to read in relevant part:

An administrative law judge shall not hear an appeal from an inmate in the custody of the Department of Corrections *involving the loss of the opportunity to earn sentence-*

3. S.C.Code Ann. § 24–13–210(A) (2007) (providing for good-time credits where a prisoner "has faithfully observed all the rules of the institution where he is confined and has not been subjected to punishment for misbehavior"). We note that Title 24 was substantially amended on June 11, 2010. These amendments, however, do not affect the disposition of the instant case.

4. *Id.* § 24–13–230(A) (providing for earned-work credits where a prisoner is assigned to a productive duty assignment or who is regularly enrolled and actively participating in an academic, technical, or vocational training program).

5. SCDC Policy OP–21.11 "provides for an inmate's failure to earn good time for a given month upon the inmate's violation of a rule."

6. Appellant claims his sentence was extended based on the following: (1) the "minor" offense was treated as a "major" offense; and (2) his "2 for 5 EWC level was reduced to a 3 for 5 EWC level, which decreased his monthly work credits by 3.6214279 days credit per month in addition to the withholding of good-time for the month of the infraction." According to Appellant, the sanction "extended [his] max-out date from March 28, 2017 to November 2, 2017, which is a 217 day[ ] difference."

7. Act No. 334, 2008 S.C. Acts 3308. This amendment became effective on June 16, 2008, eight days prior to Appellant's disciplinary violation.

*related credits* pursuant to Section 24–13–210(A) or Section 24–13–230(A).

S.C.Code Ann. § 1–23–600(D) (Supp.2011) (emphasis added). Based on this amendment, the SCDC contended the ALC was without jurisdiction to hear "inmate appeals in which inmates have not lost good time, but have failed to earn good time for the month of their disciplinary infraction."

Appellant filed a brief in opposition to the SCDC's motion. In terms of his conviction, Appellant challenged the SCDC's enforcement of the policy on the ground there was no other legal assistance program available to illiterate inmates. Appellant further asserted he was denied minimal due process in the administrative proceedings as he was not allowed an opportunity to present documentary evidence or witnesses. Appellant also claimed the administrative findings were "arbitrary, capricious, and characterized by an abuse of discretion."

With respect to the imposed sanction, Appellant claimed the "erroneous extension of his sentence" implicated a state-created liberty interest and violated equal protection. Finally, Appellant asserted that section 1–23–600(D) is "being construed to such an extent that an iron curtain is drawn between Appellant and the Court." Specifically, Appellant claimed the SCDC's interpretation would essentially preclude all appeals from prisoners "in which they have only lost goodtime for the month of the infraction."

The ALC summarily dismissed Appellant's appeal. In so ruling, the ALC referenced the recent amendment cited by the SCDC and noted that the "statute applies not only to the loss of the right to earn good time for the month (of the infraction) but to the loss of the right to earn other credits such as earned work credits." [8]

Appellant appealed the ALC's order to the Court of Appeals. This Court certified the appeal pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

---

8. We note the ALC incorrectly cited S.C.Code Ann. § 1–23–560(D) (2008). We believe, however, this citation was a scrivener's error as the ALC properly cited the amendment to section 1–23–600(D) and quoted the applicable portion of this statute.

## II. Standard of Review

The ALC has subject matter jurisdiction under the Administrative Procedures Act ("APA") to hear properly perfected appeals from the SCDC's final orders in administrative or non-collateral matters. *Slezak v. S.C. Dep't of Corr.*, 361 S.C. 327, 331, 605 S.E.2d 506, 507 (2004). Our standard of review derives from the APA. *Al–Shabazz v. State*, 338 S.C. 354, 379, 527 S.E.2d 742, 755 (2000). We may affirm, remand, reverse, or modify the appealed decision if the appellant's substantive rights have suffered prejudice because the decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–610(B) (Supp.2011).

## III. Discussion

Although Appellant raises five issues, he essentially challenges the ALC's dismissal of his appeal and the underlying disciplinary conviction. Accordingly, in the interest of logical progression, we have consolidated Appellant's issues into these two sections.

## A.

Initially, Appellant contends the ALC erred in finding that his appeal did not implicate a state-created liberty interest as the sanction imposed by the SCDC effectively extended his sentence due to the reduction in the rate at which he earned sentence-related credits. In addition, Appellant challenges the Legislature's enactment and the ALC's interpretation of the 2008 amendment to section 1–23–600(D). Appellant maintains the amendment rendered section 1–23–600(D) unconstitutional as it effectively denies "Appellant and SCDC inmates judicial review of an institutional disciplinary hearing

when there is only a loss of the opportunity to earn sentence related credits."

Because section 1–23–600(D) eliminates judicial review of these types of grievances, Appellant avers that the statute violates his right to substantive and procedural due process. Appellant further contends the statute violates his right to equal protection as it essentially results in the disparate treatment of inmates who are convicted of disciplinary offenses. According to Appellant, inmates who are sanctioned to the "revocation" of good-time credits may receive judicial review of their convictions whereas those who are sanctioned to the "loss" of earning sentence-related credits will not be entitled to judicial review.

Given that section 1–23–600(D) eliminates an inmate's ability to challenge the legality of a disciplinary conviction that involves "the loss of the opportunity to earn sentence-related credits" and this Court's decision in *Al-Shabazz*[9] precludes PCR for these grievances, Appellant ultimately claims an inmate will never be able to receive judicial review under these circumstances. Based on the foregoing, Appellant urges this Court to "strike down" section 1–23–600(D) as unconstitutional.

 At least facially, it would appear that an analysis of this case would simply involve an application of the rules of statutory construction. "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Bryant v. State*, 384 S.C. 525, 529, 683 S.E.2d 280, 282 (2009). Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. *Gay v. Ariail*, 381 S.C. 341, 345, 673 S.E.2d 418, 420 (2009).

 Applying these rules, the plain terms of section 1–23–600(D) precludes the ALC from hearing *all* inmate appeals involving the loss of the opportunity to earn sentence-related

---

**9.** *See Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000) (holding that, aside from two non-collateral matters specifically listed in the PCR Act, PCR is a proper avenue of relief *only* when the applicant mounts a collateral attack challenging the validity of his conviction or sentence as authorized by section 17–27–20(a)).

credits. Thus, the Legislature definitively limited the parameters of the ALC's subject matter jurisdiction regarding certain appeals by inmates. The Legislature has the authority to limit the subject matter jurisdiction of a court that it has created. *See Black v. Town of Springfield,* 217 S.C. 413, 415, 60 S.E.2d 854, 855 (1950) ("The jurisdiction of a Court of the subject matter of an action depends upon the authority granted to it by the Constitution and laws of the State and is fundamental."); S.C.Code Ann. §§ 1–23–500, –600 (Supp.2011) (creating the ALC and outlining the extent of its jurisdiction).

Because the effect of this statute also tangentially implicates state-created liberty interests, we believe it is necessary to clarify the amendment and re-evaluate our decision in *Furtick v. South Carolina Department of Corrections,* 374 S.C. 334, 649 S.E.2d 35 (2007). In *Furtick,* an inmate was found guilty of a disciplinary offense and reprimanded. As a result of the sanction, Furtick alleged he did not earn his good-time credit for the month of the infraction. *Id.* at 336, 649 S.E.2d at 36. Furtick appealed from this disciplinary decision through the SCDC's internal grievance system. After receiving the SCDC's final denial of his grievance, Furtick appealed to the ALC. *Id.* The ALC dismissed the matter, finding Furtick had no liberty interest in good-time credits that he was unable to earn as a result of the rule violation. *Id.* On appeal, the circuit court affirmed the ALC's decision on the ground there was no liberty interest implicated in Furtick's grievance. *Id.*

Furtick appealed the circuit court's order to this Court, arguing the circuit court erred by finding the ALC lacked subject matter jurisdiction to review his grievance. *Id.* at 337, 649 S.E.2d at 36. A majority of this Court agreed with Furtick, stating "where a matter clearly implicates a loss of statutory sentence-related credits, the ALC may not summarily dismiss the action." *Id.* at 340, 649 S.E.2d at 38. In analyzing the specific facts of Furtick's case, the Court "reiterate[d] that the State of South Carolina clearly has created a liberty interest in good-time credits by enacting section 24–3–210." *Id.*

The Court referenced *Al–Shabazz's* holding that "the ALC has subject matter jurisdiction over an inmate's appeal when the claim sufficiently 'implicates a state-created liberty interest.' " *Id.* at 339, 649 S.E.2d at 38. The Court further clarified

the ALC's jurisdiction in *Slezak v. S.C. Dep't of Corr.*, 361 S.C. 327, 605 S.E.2d 506 (2004), stating "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed." *Id.* at 340, 649 S.E.2d at 38. However, the amendment to section 1–23–600(D) changed the extent of that jurisdiction.

The dissent, in *Furtick*, disagreed with the majority's decision on the ground "an inmate has no constitutionally significant interest in the loss of the opportunity to earn certain sentence-related credits." *Id.* at 341, 649 S.E.2d at 39. In reaching this conclusion, Chief Justice Toal reasoned that "[a] state creates a liberty interest in sentence-related credits only where an inmate has a legitimate expectation of receiving such credits." *Id.* at 342, 649 S.E.2d at 39. The dissent noted that "[g]enerally, an inmate is not entitled to due process protection for State action that may only speculatively affect the duration of his sentence." *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

The dissent went on to distinguish Furtick's situation, i.e., the loss of the opportunity to earn good-time credit, from one where an inmate must forfeit accrued sentence-related credits. *Id.* at 343, 649 S.E.2d at 40. In making this distinction, the dissent stated that "an inmate does not have a legitimate expectation that he will receive good-time credits, but merely possesses only the hope that his behavior and observation of prison rules will be sufficient to entitle him to a reduction in his sentence." *Id.* Accordingly, the dissent held that "an inmate does not have a protected liberty interest in unearned good-time credits." *Id.* Similarly, the dissent found that "[b]ecause an inmate is not entitled to earn credit at a particular level, ... an inmate has no protected liberty interest in maintaining a specific work credit level for sentence reduction purposes." *Id.*

Ultimately, the dissent agreed that the circuit court erred in holding the ALC lacked subject matter jurisdiction as Furtick had properly perfected his appeal. However, based on the conclusion that Furtick did not have a protected liberty interest in unearned sentence-related credits, the dissent determined the ALC's improper dismissal of Furtick's claim constituted harmless error as the ALC could have summarily dismissed the appeal without a hearing. *Id.* at 345, 649 S.E.2d at 41.

Upon further reflection and consideration of the recent amendment to section 1–23–600(D), we believe the dissent in *Furtick* correctly declined to find the loss of the opportunity to earn sentence-related credits implicated a state-created liberty interest. As noted by Chief Justice Toal, there is a difference between an inmate's *forfeiture of accrued* sentence-related credits versus the *withholding of unearned, potentially available* sentence-related credits. Clearly, an inmate does not acquire an interest in sentence-related credits until he or she earns them. As noted in sections 24–13–210(A) and 24–13–230(A), these credits are not automatically given to an inmate. Instead, an award of good-time credits at the end of each month is contingent upon an inmate "faithfully" observing all disciplinary rules during that month. Moreover, an award of work credits is given at the discretion of the Director of the Department of Corrections and is contingent upon an inmate's completed days of employment.

In reviewing the legislative history of the amendment to section 1–23–600(D), it is clear the Legislature was responding to this Court's decision in *Furtick*. As we interpret the amendment, the Legislature sought to limit the ALC's subject matter jurisdiction with respect to inmate appeals involving the loss of the opportunity to earn sentence-related credits. Notably, the amendment was enacted only months after this Court issued its opinion. Moreover, the preamble to the amendment states in part that it is intended to "prohibit the hearing of certain inmate appeals by the [Administrative Law] Court." Finally, the language used in the amendment essentially tracks the position espoused by the dissent.

Based on the foregoing, we acknowledge the Legislature's authority to limit the jurisdiction of the ALC. Moreover, an inmate's loss of the opportunity to earn sentence-related credits does not implicate a state-created liberty interest.[10] We are, nevertheless, concerned that this legislative action com-

---

**10.** If we were to allow *Furtick* to remain good law, it would necessarily create a dual track for resolving issues raised by inmates regarding good-time credits. Specifically, the ALC would be the forum for disputes involving accrued good-time credits and the circuit court would be the forum for disputes involving the loss of an opportunity to earn good-time credits, *Al-Shabazz* notwithstanding. This method of

bined with this Court's decision in *Al–Shabazz* may violate an inmate's due process rights as it completely eviscerates all judicial review of an inmate's grievance involving the loss of earned sentence-related credits due to a disciplinary violation. As the SCDC concedes, "[a] literal reading of the amendment could remove all disciplinary appeals from the ALJ's jurisdiction because all major disciplinary appeals 'involv[e]' the failure to earn good-time credits, even if the case also involve[s] the loss of previously earned good-time credits." The SCDC acknowledges that "such a literal reading would not be permissible under the rules of construction."

Accordingly, we hold the ALC may summarily dismiss an inmate appeal that involves *only* the loss of the opportunity to earn sentence-related credits. However, a matter is reviewable by the ALC where an inmate's appeal *also* implicates a state-created liberty or property interest, such as the loss of accrued sentence-related credits. Stated another way, the ALC may not summarily decline to hear an inmate appeal solely on the ground that it involves the loss of the opportunity to earn-sentence related credits.

█ Turning to the facts of the instant case, the ALC should not have summarily dismissed Appellant's appeal as it involved more than a review of the loss of the opportunity to earn good-time credits and a reduction in earned-work credits. Appellant also challenged the SCDC's enforcement of the policy forbidding one inmate from providing legal assistance to another inmate. Because Appellant's claim constitutes an as-applied constitutional challenge to the policy, the ALC could have ruled on this claim. *See Travelscape, LLC v. S.C. Dep't of Rev.*, 391 S.C. 89, 108–09, 705 S.E.2d 28, 38–39 (2011) (holding that the ALC may not rule upon a facial challenge to the constitutionality of a regulation or statute but may rule upon an as-applied challenge). However, for reasons that will be discussed, we find a remand to the ALC is unnecessary as Appellant has not demonstrated any grounds on which he could be granted relief.[11]

---

resolution would lend itself to confusion and would constitute an inefficient use of judicial resources.

11. During the pendency of this appeal, the Court of Appeals reversed Appellant's underlying convictions and sentences. *State v. Howard,* 396

## B.

Appellant claims the SCDC's policy provision regarding "Unauthorized Services/Piddling (845)" violates federal law. Specifically, Appellant contends the SCDC should not enforce a policy that prohibits him from helping an illiterate inmate gain access to the courts because the Kershaw Correctional Institution does not have an adequate law library or legal assistance programs for illiterate inmates. In support of his assertions, Appellant cites the United States Supreme Court's ("USSC") decision in *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). We find Appellant's reliance on *Johnson* is misplaced.

In *Johnson,* a state prisoner serving a life sentence was transferred to the maximum security building for violation of a prison regulation prohibiting an inmate from assisting another inmate with respect to "Writs or other legal matters." *Id.* at 484, 89 S.Ct. 747. Subsequently, Johnson filed in federal district court a "motion for law books and a typewriter," in which he sought relief from his confinement in the maximum security building. *Id.* The district court treated the motion as a petition for a writ of habeas corpus and, after a hearing, held that the regulation was void because, absent any viable alternatives, it in effect "barred illiterate prisoners from access to federal habeas corpus." *Id.* The state appealed the district court's decision. *Id.* at 485, 89 S.Ct. 747. The Court of Appeals for the Sixth Circuit reversed, concluding that "the regulation did not unlawfully conflict with the federal right of habeas corpus" and was justified by the "interest of the State in preserving prison discipline and in limiting the practice of law to licensed attorneys." *Id.*

Ultimately, the USSC was called upon to determine whether the policy was constitutional in the absence of any alternative assistance provided by the State to assist illiterate inmates. *Id.* at 486, 89 S.Ct. 747. The Court found the regulation was invalid as it conflicted with the federal right of habeas corpus. *Id.* at 487, 89 S.Ct. 747. In so ruling, the Court found the

S.C. 173, 720 S.E.2d 511 (Ct.App.2011). Thus, even if Appellant was entitled to relief with respect to the disciplinary sanction, it would be inconsequential as Appellant has been released from incarceration and is subject to a new trial.

State had adopted a rule which, in the absence of any other source of assistance, operated to forbid illiterate or poorly-educated prisoners from filing habeas corpus petitions. *Id.*

The Court explained that, "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners." *Id.* at 490, 89 S.Ct. 747. The Court, however, clarified that "[e]ven in the absence of such alternatives, the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities." *Id.* at 490, 89 S.Ct. 747.

Significantly, the USSC did not establish a specific right for an inmate to provide legal assistance. Instead, the USSC found the discipline that Johnson received as a result of his assistance conflicted with the right to file a writ of habeas corpus. *See id.* at 488, 89 S.Ct. 747 (stating "[t]he considerations that prompted (the regulation [barring inmate-to-inmate legal assistance]) are not without merit, but the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus" (quoting *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941))). It is important to note that the USSC rendered its decision via Johnson's personal petition for habeas corpus. Absent Johnson's habeas claim, there would have been no justiciable controversy for the USSC to decide. Thus, there would have been no path to reach the issue regarding access to the courts.

■ In essence, if there is another source of assistance for illiterate inmates, then there is no violation of *Johnson* as there is no independent right to provide legal assistance to another inmate. *See Gibbs v. Hopkins,* 10 F.3d 373, 378 (6th Cir.1993) ("[W]hile there is technically no independent right to assist, prison officials may not prevent such assistance or retaliate for providing such assistance *where no reasonable*

*alternatives are available.*" (emphasis added)); *cf. Lewis v. Casey*, 518 U.S. 343, 350–51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (recognizing that inmates have a right to receive legal advice from other inmates only when it is a necessary "means for ensuring a 'reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts' " (quoting *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977))).[12]

■ Here, Appellant fails to allege that there is no other source of assistance for illiterate inmates. In fact, in his affidavit, Appellant references the law library in the Kershaw Correctional Institution and the "Kershaw Law Library Clerks." Thus, Appellant does not claim there was an absence of legal assistance, but, rather, that it was inadequate. Because there were reasonable alternatives available for the illiterate inmate, Appellant cannot sustain a claim pursuant to *Johnson*.

Alternatively, Appellant asserts that an inmate's access to the courts is somehow limited due to the inadequacy of the law library and the lack of qualified library personnel. Appellant challenges the adequacy of the legal resources and the effectiveness of the law library personnel pursuant to *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), wherein the USSC held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. 1491. For several reasons, Appellant's assertion fails as a matter of law.

■ As a threshold matter, Appellant's claim is barred by the doctrine of standing as he has not demonstrated that the alleged inadequacy of the law library or library personnel caused *him* "actual injury," i.e., hindered him in pursuing his own legal claims. Instead, Appellant was providing assistance

---

12. Notably, the USSC has continued to limit constitutional protection for legal assistance between inmates. *See Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001) (holding that inmate did not possess a First Amendment right to provide legal assistance to fellow inmates beyond protection normally accorded prisoner's speech).

with respect to the inmate's PCR application. *See Lewis,* 518 U.S. at 349, 116 S.Ct. 2174 ("The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."); *Hendricks v. S.C. Dep't of Corrections,* 385 S.C. 625, 629, 686 S.E.2d 191, 193 (2009) (discussing inmate's claim of denial of access to the courts under *Bounds* and stating "[i]nsofar as the right vindicated by *Bounds* is concerned ... the inmate [ ] must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." (quoting *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174)). Moreover, Appellant's mere assertion of the inadequacy of the legal resources is not sufficient to prove an "actual injury" under *Bounds. See Lewis,* 518 U.S. at 351, 116 S.Ct. 2174 ("Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.").[13]

Furthermore, even if Appellant's claims of inadequate law resources are meritorious, he lacks standing to raise any access to the courts challenge as it is the illiterate inmate who would have sustained the "actual injury" to support such a claim. *See Lewis,* 518 U.S. at 356, 116 S.Ct. 2174 ("When any inmate, even an illiterate or non-English-speaking inmate, shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capa-

---

13. To the extent the dissent claims that Appellant sustained an "actual injury" due to the disciplinary sanction, we find this interpretation is not consistent with *Bounds.* Pursuant to *Bounds,* an "actual injury" involves the denial of "meaningful access to the courts" due to the inadequacy of the legal resources available to an inmate. *Lewis,* 518 U.S. at 356–57, 116 S.Ct. 2174. Furthermore, as previously discussed, the disciplinary sanction resulted in Appellant's failure to earn good-time credits for the month of the disciplinary infraction and a reduction in earned-work credit for that month and subsequent months. Because Appellant did not lose any accrued good-time credits and was not entitled to earned-work credits as these credits are discretionary, there is no basis to support the dissent's assertion that Appellant was injured by the disciplinary action.

bility of filing suit has not been provided, he demonstrates that the State has failed to furnish '*adequate* law libraries or *adequate* assistance from persons trained in the law'" (quoting *Bounds*, 430 U.S. at 828, 97 S.Ct. 1491)).

Because there is no particularized right to provide legal assistance to another inmate under *Johnson* and there is no derivative right to affirmatively assert a *Bounds* violation, we cannot discern a legal basis on which Appellant could be granted relief. Even if we assume that Howard has a viable *Johnson* defense to the enforcement of the prison disciplinary policy, he has no cognizable injury as a result of the enforcement of the policy.

Alternatively, even if the SCDC's policy is found to be valid as applied, Appellant claims he was convicted of the disciplinary violation without due process of law because of the following substantive and procedural errors in the disciplinary hearing: (1) he was not allowed an opportunity to question his accuser, and (2) he was not permitted to present inmate witnesses and documentary evidence that would have refuted the charged offense.

 "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Al–Shabazz*, 338 S.C. at 369, 527 S.E.2d at 750 (quoting *Bd. of Regents of State Colls., v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). By overruling *Furtick*, any liberty interest claimed by Howard is negated. Furthermore, Howard does not claim the loss of a property interest.

 Moreover, Howard's due process claims lack merit. In the first instance, Howard admitted the prohibited conduct. Secondly, an "inmate does not have a constitutional right to confront and cross-examine witnesses who testify against him, although prison officials have the discretion to grant that right in appropriate cases." *Al–Shabazz*, 338 S.C. at 371, 527 S.E.2d at 751 (citing *Wolff v. McDonnell* 418 U.S. 539, 563–72, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

We note that any defenses Appellant may have had to his conviction, including a sustainable *Johnson* claim, could have been raised and reviewed pursuant to the internal prison

grievance process. Accordingly, we reject Appellant's contention that he was convicted without due process of law. *See Al–Shabazz*, 338 S.C. at 373, 527 S.E.2d at 752 (holding that SCDC's disciplinary and grievance procedures are consistent with constitutional standards delineated in *Wolff v. McDonnell* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which established the minimum constitutional requirements for procedural due process when an inmate is disciplined for "serious misconduct").

### IV. Conclusion

Because the plain language of section 1–23–600(D) would prohibit an ALC from hearing *all* inmate appeals involving the loss of the opportunity to earn sentence-related credits, we clarify that the ALC may not summarily dismiss an appeal solely on the basis that it involves the loss of the opportunity to earn sentence-related credits. Instead, the ALC must also consider whether the appeal implicates a state-created liberty or property interest.

After reconsidering our decision in *Furtick*, we find the loss of the opportunity to earn sentence-related credits does not implicate a state-created liberty interest. Accordingly, we overrule *Furtick* and adopt the dissent's reasoning in that opinion.

In conclusion, we affirm the ALC's dismissal of Appellant's appeal as we find that Appellant has failed to establish a legal basis on which to challenge the enforcement of the disciplinary policy underlying his conviction.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., and HEARN, J., concur. PLEICONES, J., dissenting in a separate opinion. KITTREDGE, J., filing a separate opinion.

Justice PLEICONES.

I respectfully dissent. In my view, the jurisdiction of the administrative law courts is a matter entirely within the discretion of the General Assembly, which created that system by statute and could abolish it at will. The majority recognizes this, as well as the fact that an inmate's right to *judicial*

review of decisions that implicate constitutional interests is not and cannot be diminished by the removal of administrative review by an executive agency.[14] Administrative review promotes efficiency in government but does not alter its fundamental separation of powers and resulting right to judicial review of executive actions affecting certain interests. *See Al–Shabazz v. State,* 338 S.C. 354, 369, 527 S.E.2d 742, 750 (2000). Indeed, Article I, § 22, of the South Carolina Constitution explicitly guarantees the right to judicial review of all final agency decisions that affect private rights or liberty or property interests.

By removing ALC review of administrative decisions involving loss of the ability to earn credits under S.C.Code Ann. § 1–23–600 (Supp.2011), the General Assembly has in effect returned initial review of those decisions to the judicial branch. *Al–Shabazz, supra;* S.C. Const. art. I, § 22. Thus, the General Assembly's alteration of the ALC's jurisdiction does not create a constitutional question because the prisoner retains his right to judicial review, and the ALC's determination that it lacked jurisdiction was correct.

Unlike the majority, however, I cannot resolve the practical difficulties created by the General Assembly's alteration of ALC subject matter jurisdiction by finding that the opportunity to earn sentence-related credits is not a liberty interest. I continue to believe that *Furtick* was correctly decided for the reasons expressed by the majority in that case, namely, that *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), is controlling. The *Wolff* Court acknowledged that "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Id.* at 557, 94 S.Ct. 2963. Nevertheless, "the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and

---

**14.** In my view, the majority's references to ALC review as judicial review is a misnomer which tends to blur the distinction between the executive and judicial branches in a context in which that distinction is important.

required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.*

The General Assembly created such an interest in S.C.Code Ann. § 24–13–210(A) (2007). Moreover, the constitutional dimension of that interest is the same whether the discipline imposed is to withhold good-time credits already earned or the opportunity to earn them. Under § 24–13–210(A), a prisoner who "faithfully observe[s] all the rules of the institution where he is confined" is "entitled to a deduction from the term of his sentence[.]" The entitlement is not merely to speculatively hope about a future benefit that might be conferred as an exercise of pure discretion. Rather, the accrual of good-time credits lies within the prisoner's control under § 24–13–210.

The *Wolff* Court noted that the "analysis as to liberty parallels the accepted due process analysis as to property," citing, among other examples, the procedural due process required before a person may be deprived of his interest in a "government-created job[ ] held, absent 'cause' for termination." *Id.* at 557–58, 94 S.Ct. 2963 (citing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The entitlement of an employee to hold his job absent cause for termination provides a useful analogy to the opportunity of an inmate to earn good-time credits. An employee's expectation that he will avoid incurring cause for termination while performing his job duties is no less speculative than a prisoner's expectation that he will avoid violating a prison rule while incarcerated. Indeed, the very fact that the opportunity to earn good-time credits is withheld as a sanction demonstrates that a liberty interest is implicated. *Id.* at 557, 94 S.Ct. 2963 ("the State having created the right to good time and *itself recognizing that its deprivation is a sanction authorized for major misconduct,* the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' " (emphasis added)).

In this case, appellant alleges that he was disciplined for violating an unconstitutional policy and that the infraction was treated as a major offense. He avers that, as a sanction for the violation, his earned work credit level was reduced, extending his maxout date by 217 days. Yet the majority holds that no cognizable liberty interest has been affected, so that

his claims may be dismissed without a hearing. In my view, the majority's holding, overruling *Furtick* and finding that appellant was not entitled to a hearing to review the imposition of a major disciplinary penalty when he was deprived of the right to earn good-time credits, contravenes the federal and state constitutions.

In my view, appellant was deprived of a liberty interest. When a claimant asserts that government action has wrongly deprived him of a liberty interest and the claim is fact intensive, a hearing to develop the factual basis of the claim is a necessary part of the review guaranteed by due process. *Id.* at 557–58, 94 S.Ct. 2963 ("This analysis as to liberty parallels the accepted due process analysis as to property. The Court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests."); *see also Kurschner v. City of Camden Planning Comm'n,* 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008) (recognizing that due process requires a trial-type hearing for fact-specific, adjudicatory decisions by administrative agencies). Thus, if a hearing is required to develop the factual basis of the claim, that hearing must be performed by the circuit court if the General Assembly has not provided for such a hearing within the administrative review process. *See Travelscape, LLC v. South Carolina Department of Revenue,* 391 S.C. 89, 108–09, 705 S.E.2d 28, 38 (2011).

Appellant presented a fact-intensive issue implicating a constitutional liberty interest and timely appealed. The factual basis for his constitutional arguments was not developed by the Department of Corrections, the ALC, or a court. Were appellant still incarcerated, I would remand to circuit court for a full airing of the issues.[15]

---

**15.** Justice Kittredge correctly observes that Appellant has made no explicit request that we consider an exception to mootness in this case. In my view, Appellant could not have done so since his case did not become moot until after it was submitted for this Court's decision. Indeed, we cannot say on this record whether the case is moot. If Appellant is convicted upon retrial, we do not know what effect the disciplinary violation at issue here will have upon the credit he is awarded for time served. Finally, the facts alleged by Appellant fit squarely within the mootness exception for disputes that are capable of repetition yet evading review. *See Turner v. Rogers,* —— U.S. ——, 131 S.Ct. 2507, 2515, 180 L.Ed.2d 452 (2011).

On the issue whether appellant was unconstitutionally penalized for helping an illiterate inmate prepare a post-conviction relief application, *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), is squarely on point. The majority holds that *Johnson* did not establish a specific right for a prisoner to provide legal assistance and that, in the absence of an established right to provide legal assistance, appellant lacks standing to make a claim. In *Johnson*, however, the prisoner challenging the regulation (Johnson) was, like the appellant in this case, seeking to offer legal assistance to another inmate. The *Johnson* Court did not hold that he lacked standing to bring a claim. Rather, it held that "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners." *Id.* at 490, 89 S.Ct. 747. Moreover, contrary to the majority's assertion, appellant suffered an actual injury when he was punished for a major infraction and consequently became subject to a later maxout date, as noted above. Thus, it is doubly apparent that appellant had standing to bring this claim.

Furthermore, I do not agree with the majority's assertion that appellant failed to allege that there is no other source of assistance for illiterate inmates. Appellant states that the inmate he sought to assist is illiterate and that no one else would help him, and he asserts that no assistance is provided to illiterate inmates by persons trained in the law. The fact that appellant refers to a law library and law library clerks is not inconsistent with his assertion that assistance is not made available to illiterate inmates, as the majority appears to believe. Nor does the mere existence of law libraries and clerks ensure that illiterate prisoners are given adequate assistance to enable them to access the courts without the help of other prisoners.

Finally, appellant contends that he was convicted of a disciplinary violation without due process of law in that, among other contentions, he was denied the opportunity to call witnesses or present documentary evidence. The due process required for imposition of penalties for major infractions includes the opportunity to call witnesses and present documen-

tary evidence. *Wolff,* 418 U.S. at 566, 94 S.Ct. 2963; *Al–Shabazz,* 338 S.C. at 371, 527 S.E.2d at 751. In this case, the Department of Corrections does not contradict appellant's assertion that he was not afforded such an opportunity, and no factfinder passed on the issue. Thus, appellant was not afforded due process.

I therefore respectfully dissent. I would affirm *Furtick* and acknowledge the viability of appellant's claim under *Johnson.*

Justice KITTREDGE.

I would dismiss this appeal as moot. As the majority opinion indicates, Appellant has been released from prison, as his underlying convictions and sentences were reversed by the court of appeals during the pendency of this appeal. As a result, we are no longer presented with a justiciable controversy. In the words of the majority opinion, Appellant's claim for relief is now "inconsequential." Moreover, Appellant has not requested that we invoke any exception to mootness and proceed to the merits of his appeal. Accordingly, I would dismiss the appeal and refrain from issuing an advisory opinion.